THE WESTERN AND ATLANTIC RAILROAD CO. *v.* ESSLINGER.

If there was negligence on the part of the railroad company in leaving a portion of its track in such condition as to render coupling cars unsafe at that point, yet as it affirmatively appeared from the plaintiff's evidence, which was the only evidence showing how and when her husband was killed, that this negligence, if it existed, did not cause or contribute to his death, and the evidence as a whole showing that in all other respects the company was free from negligence, the verdict was unwarranted, and therefore contrary to law. ATKINSON, J., dissenting.

April 8, 1895. Brought forward from last term. Code, §4271(a-c).

Action for damages. Before Judge MILNER. Whitfield superior court. April term, 1894.

PAYNE & TYE and R. J. & J. McCAMY, for plaintiff in error. MADDOX & STARR, *contra*.

SIMMONS, Chief Justice.

The plaintiff brought her action for damages for the homicide of her husband, who was killed while coupling cars on the defendant's railroad. Three allegations of negligence were made in the declaration : (1) that the cars were moved back too fast; (2) that there was a spike running through the brake-beam, which was dangerous to a coupler; and (3) that the ground where the coupling was to be made was dangerous. As to the first and second grounds, there was no evidence to support them. The main contention was over the third ground. It appears that at the place where the homicide occurred, there was a street-crossing, and the planks of the crossing, between the rails of the defendant's track, were from one and a half to three inches thick. The ends of the planks were not bevelled, and the dirt seemed to

have been washed away from them, making it about
three inches from the top of the planks to the ground.
The deceased undertook to couple the train to a car
which was standing on the track at this point, and un-
der which the planks extended for about six feet.   The
theory of the plaintiff was, that the momentum with
which the train came back against this car forced the
car beyond the point where the ends of the plank were,
while the deceased was between the cars, and that the
"step-off" at the ends of the plank caused him to lose
his footing and fall, and before he could extricate him-
self, the cars passed over him, killing him.   The only
evidence by which the plaintiff sought to sustain this
theory consisted of the opinions of experts and others
who did not see the occurrence in question, but thought
it might have happened in that manner.   These opinions,
however, were contradicted by the evidence of the only
witness who saw the deceased at the time he was in-
jured.   This witness was introduced by the plaintiff, and
testified as follows: "As [the deceased] went in to make
the coupling, just as the cars hit, his lamp fell out, and I
heard him holloa, 'Oh Lordy';" the deceased was then
from four to six feet from the end of the plank.   Accord-
ing to the evidence of this witness, the injury must
have happened at the time the lamp fell and the de-
ceased cried out; and if this was so, it was impossible
for the injury to have been occasioned by his stepping
off the end of the plank, for he had not arrived at that
point.   It is true the evidence shows that when the cars
stopped he was found on the ground some five or six
feet beyond the end of the plank, but it appears that
the cars had caught his clothing and dragged him there.
It appearing, therefore, from the only evidence showing
how and when the plaintiff's husband was killed, that
even if the railroad company was negligent in respect
to the condition of the ground at the end of the plank,

this did not cause or contribute to his death, and the evidence as a whole showing that in all other respects the company was free from fault, the verdict was unwarranted, and therefore contrary to law.

*Judgment reversed.*